*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. L. NEWMAN, Minor.

UNPUBLISHED
August 13, 2019

No. 346458
Livingston Circuit Court
Family Division
LC No. 2016-015329-NA

Before: CAVANAGH, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to the minor child, ELN, under MCL 712A.19b(3)(g) (failure to provide proper care and custody), (j) (reasonable likelihood that the child will be harmed if returned to the home of the parent), and (m) (parent convicted of one or more of specified offenses). We affirm.[1]

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent, who is 36 years old, has a lengthy history in the criminal justice system. He was convicted of second-degree criminal sexual conduct (CSC-II) (victim older than 13 but less than 16) in 2002 and was originally sentenced to serve one year in jail with five years' probation. However, he subsequently violated his parole and was sentenced to serve 3 to 15 years in prison. Over the course of many years, a cycle ensued in which respondent would be released from prison on parole only to violate the terms of his parole and be returned to prison. His parole violations included prohibited contact with minor children and aggravated assault against his girlfriend. In total, respondent served the entirety of his 15-year sentence.

Respondent was on parole in 2017 when he and ELN's mother, AN, began dating and she subsequently became pregnant with ELN. Despite having only 74 days remaining on his parole, respondent absconded from parole and moved into AN's Section 8 house. The two married in

---

[1] Respondent-mother's parental rights were also terminated; however, she is not a party to this appeal.

December 2017, and ELN was born in February 2018. Both parents concealed the marriage, respondent's whereabouts, and his relationship to ELN from Child Protective Services (CPS) and law enforcement.[2] On at least two occasions, respondent hid while CPS visited the house. Respondent worked odd jobs and continued to live in the same house as ELN while having four warrants active for his arrest. Eventually, the CPS worker learned of the marriage and respondent's whereabouts. Police subsequently visited the house, located respondent hiding in the attic, and arrested him. Respondent denied that ELN was his child and refused a DNA test.

Initially, because ELN's father was unknown, petitioner filed a petition and sought termination of only AN's parental rights. Once it was determined that respondent was ELN's legal father, petitioner filed an amended petition seeking termination of respondent's parental rights in addition to AN's. The trial court determined that jurisdiction was proper under MCL 712A.2(b)(1) and (2). Subsequently, the court found that termination was appropriate under MCL 712A.19b(3)(g), (j), and (m), and that termination was in ELN's best interests.

## II. ANALYSIS

### A. JURISDICTION AND REASONABLE EFFORTS

Respondent first argues that the trial court erred in exercising jurisdiction over him because petitioner created the circumstances that led to termination, and that termination was inappropriate because petitioner failed to make reasonable efforts to reunify ELN with respondent. We disagree.

### 1. STANDARDS OF REVIEW

Ordinarily, this Court reviews for clear error the trial court's decision to exercise jurisdiction in a termination proceeding as well as its findings of fact regarding whether petitioner made reasonable efforts to provide respondent with services aimed at reunification. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005); *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). However, respondent failed to preserve these issues for appeal because he did not raise them in the trial court. Unpreserved issues are reviewed for "plain error affecting substantial rights." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id.* at 9.[3]

---

[2] AN had an extensive prior CPS history, and her parental rights to four other children were voluntarily terminated.

[3] See *In re Ferranti*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 157907); slip op at 18, 22, 28 (overruling *In re Hatcher*, 443 Mich 426; 505 NW2d 834 (1993), and holding that "an adjudication error in an appeal from an order terminating parental rights is not a collateral attack," but further holding that "adjudication errors raised after the trial court has terminated parental rights are reviewed for plain error").

## 2. DISCUSSION

The trial court did not plainly err in taking jurisdiction over ELN.

"To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists," and jurisdiction must be proven by a preponderance of the evidence. *BZ*, 264 Mich App at 295. MCL 712A.2(b), in pertinent part, gives the trial court jurisdiction

in proceedings concerning a juvenile under 18 years of age found within the county:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

* * *

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

In this case, the trial court referenced the dangerous environment of the household, respondent's criminal history, his decision to abscond from parole, his decision to hide from police in the same household as ELN, his decision to keep his relationship with AN and ELN a secret, and his eventual arrest. Respondent himself acknowledged his extensive criminal history, and his parole officer gave detailed testimony concerning his parole violations. Respondent acknowledged that he deliberately absconded from parole in order to be with AN and ELN. He testified that he deliberately concealed himself in the same household as ELN and was eventually discovered and arrested. The trial court found influential the fact that many of respondent's actions occurred after ELN's birth despite respondent's claim that he had changed and become a new man since ELN's birth. We conclude that there was ample evidence for the trial court to find that respondent, through his actions both before and after ELN's birth, neglected "to provide proper or necessary support . . . or other care necessary for [ELN's] health or morals" and that ELN was "subject to a substantial risk of harm to . . . her mental well-being," MCL 712A.2(b)(1), as well as for the trial court to find that the "home or environment, by reason of neglect, . . . criminality, or depravity on the part of" respondent-father, was "an unfit place for [ELN] to live in," MCL 712A.2(b)(2).

We reject respondent's contention that petitioner created the conditions that led to removal. He unpersuasively relies on *In re B & J*, 279 Mich App 12, 19-20; 756 NW2d 234 (2008), where we held that termination may not occur when the petitioner creates the grounds for termination. However, this was in the context of the statutory grounds for termination and not the assumption of jurisdiction. Moreover, petitioner did nothing to create the conditions that led to removal in this instance. It was respondent's decision to abscond from parole, to conceal

himself in the same house as ELN, and to subject ELN to a dangerous and unstable environment. Petitioner's actions in contacting police hardly evidence the creation of these circumstances.

We also reject respondent's argument that petitioner was required to make reasonable efforts toward reunification. Although typically the petitioner must make reasonable efforts to reunify the parent and child prior to termination, no such efforts need be made when termination is petitioner's goal at the outset. MCR 3.977(E); *In re Moss*, 301 Mich App 76, 90-91; 836 NW2d 182 (2013). The petitioner may seek termination in the initial petition, *id*. at 91, and petitioner did so. We are satisfied that the remaining requirements of MCR 3.977(E) were met. Accordingly, petitioner was not required to make reasonable efforts to reunify.[4]

## B. CONSTITUTIONALITY CHALLENGE

Respondent next argues that one of the statutory grounds for termination, MCL 712A.19b(3)(m), is unconstitutional and violated his due-process rights. We disagree.

### 1. STANDARD OF REVIEW

Ordinarily, this Court reviews de novo the constitutionality of a statute. *In re Gach*, 315 Mich App 83, 97; 889 NW2d 707 (2016). However, respondent failed to preserve this issue for appeal because he did not raise it in the trial court. Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *In re BGP*, 320 Mich App 338, 342; 906 NW2d 228 (2017).

### 2. DISCUSSION

Both the United States and Michigan Constitutions provide safeguards to protect citizens' due-process rights. See US Const, Am XIV, § 1; Const 1963, art 1, § 17. Parents possess "a significant interest in the companionship, care, custody, and management of their children. This interest has been characterized as an element of 'liberty' to be protected by due process." *Gach*, 315 Mich App at 99 (quotation marks and citation omitted). The parent and child "share a vital interest in preventing erroneous termination of their natural relationship until the petitioner proves parental unfitness." *Id*. (quotation marks and citation omitted). Statutes are presumed to be constitutional, and the burden is on the party challenging the statute to demonstrate its unconstitutionality. *In re AH*, 245 Mich App 77, 82; 627 NW2d 33 (2001).

Respondent challenges the constitutionality of MCL 712A.19b(3)(m), citing to this Court's decision in *Gach* which held that then-MCL 712A.19b(3)(*l*) was unconstitutional because it created a presumption of termination that a respondent had no fair opportunity to rebut. *Gach*, 315 Mich App at 98-99. Former subdivision (3)(*l*) permitted termination when the respondent's rights to a different child had been terminated under MCL 712A.2(b) proceedings.

---

[4] Although not specifically challenged by respondent, we conclude that there was ample evidence to support the trial court's determination that termination was warranted under MCL 712A.19b(3)(g), (j), and (m). See *Fried*, 266 Mich App at 541.

*Gach*, 315 Mich App at 97. In declaring the statute unconstitutional, we reasoned that the statute "provide[d] no way to rebut this presumption of unfitness, assuming the fact of the prior involuntary termination." *Id*. at 99.

MCL 712A.19b(3)(m) allows for termination if

> [t]he parent is convicted of 1 or more of the following, and the court determines that termination is in the child's best interests because continuing the parent-child relationship with the parent would be harmful to the child[.]

One of the listed offenses is CSC-II, MCL 750.520c, and respondent does not dispute that he was convicted of CSC-II in 2002. Unlike former subdivision (3)(*l*), MCL 712A.19b(3)(m) requires not only a conviction of one of the listed offenses, but also a determination that "termination is in the child's best interests because continuing the parent-child relationship with the parent would be harmful to the child," which must be shown by clear and convincing evidence. Therefore, subdivision (3)(m) does not create an impermissible irrebuttable presumption and respondent has not demonstrated its unconstitutionality. See *In re AH*, 245 Mich App at 82.[5]

## C. BEST INTERESTS

Finally, respondent argues that the trial court clearly erred in determining that termination was in ELN's best interests. We disagree.

### 1. STANDARD OF REVIEW

This Court reviews for clear error the trial court's decision on whether termination is in the child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012) (citation omitted). Clear error exists when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks and citation omitted).

### 2. DISCUSSION

Before the trial court may terminate a respondent's parental rights, the trial court must find by clear and convincing evidence that one or more statutory grounds provided in MCL 712A.19b(3) have been proven. *Olive/Metts*, 297 Mich App at 40. Once that determination has been made, "the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Id*. Whether termination is in a child's best interests must be proven by a preponderance of the evidence. *Moss*, 301 Mich App at 90. When deciding whether termination is in the child's best interests, the trial court may consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and

---

[5] Moreover, because termination was also appropriate under MCL 712A.19b(3)(g) and (j), and only one statutory ground need be met, MCL 712A.19b(3), respondent is not entitled to relief in any event.

the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). It is also proper to consider evidence that the child is not safe with the parent, that the child is thriving in foster care, and that the foster care home can provide stability and permanency. *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011).

In this case, both the foster care worker and the guardian ad litem opined that termination was in ELN's best interests. Testimony showed that ELN was thriving in foster care with older siblings and that there was a strong bond between them. In contrast, there was little evidence of any bond between respondent and ELN. ELN was removed approximately five weeks after being born. By the time of the termination trial, she was six to seven months old and had spent the majority of her life in foster care and away from respondent. By the time of his release the following year, ELN would have been over a year old. The foster parents were able to provide permanency and stability for ELN, which ELN required at such a young age. ELN's needs were met in foster care. Finally, there was ample evidence of respondent's criminal history, parole violations, lack of stable employment and housing, and decision to abscond from parole while AN was still pregnant with ELN. Respondent contended that he had changed and become a new man since ELN's birth. However, after ELN's birth, respondent continued to abscond from parole, to deceive police and CPS, and to subject ELN to potential harm while concealing himself inside of AN's house. We discern no error in the trial court's decision that termination was in ELN's best interests.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien